(209 P.3d 753)
No. 99,474

STATE OF KANSAS, *Appellee*, v. MICHAEL CURTIS, *Appellant*.

Opinion filed June 19, 2009.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, P.J., PIERRON and STANDRIDGE, JJ.

STANDRIDGE, J.: Michael Curtis appeals the district court's revocation of his probation. For the reasons stated below, we reverse the probation revocation and vacate the court's order requiring Curtis to serve the underlying sentence.

## *Chronology*

1.   On November 18, 2005, based on Curtis' plea of guilty to one count of cocaine possession, the district court sentenced Curtis to 12 months' standard probation with an underlying 40-month prison term.

2.   On January 5, 2006, Curtis possessed cocaine.

3.   On January 10, 2006, the State filed its first motion to revoke based on the January 5, 2006, alleged cocaine possession.

4.   On January 30, 2006, the court dismissed the probation revocation proceeding "upon request of the State."

5. On January 31, 2006, Curtis admitted to consumption of alcohol.

6. On February 22, 2006, the State filed its second motion to revoke based on the January 5, 2006, alleged cocaine possession.

7. On August 16, 2006, the State moved to schedule a probation revocation hearing.

8. On August 29, 2006, the court dismissed the probation revocation proceeding "upon request of the State."

9. On September 20, 2006, the State filed its third motion to revoke based on the January 5, 2006, alleged cocaine possession.

10. On November 18, 2006, Curtis' 12-month probation term expired.

11. On January 19, 2007, Curtis was arrested for driving under the influence, driving while suspended, and fleeing and eluding.

12. On January 22, 2007, the State filed its fourth motion to revoke based on the January 5, 2006, alleged cocaine possession.

13. On January 29, 2007, the State filed its first amended fourth motion to revoke based on the January 5, 2006, alleged cocaine possession, as well as the January 19, 2007, alleged illegal driving activities.

14. On February 9, 2007, the court issued notice of a March 8, 2007, evidentiary hearing regarding probation revocation.

15. On February 19, 2007, Curtis tested positive for alcohol consumption.

16. On February 21, 2007, the State filed its second amended fourth motion to revoke based on the January 5, 2006, alleged cocaine possession, the January 31, 2006, admission to alcohol consumption, the January 19, 2007, alleged illegal drinking and driving activities, and the February 19, 2007, test indicating alcohol consumption.

17. On March 12, 2007, the court continued the probation revocation hearing from March 8, 2007, to March 21, 2007.

18. On March 21, 2007, the court continued the probation revocation hearing at the State's request to "a date after March 24, 2007, in order to allow the State to present its witnesses."

19. On October 1, 2007, the court found Curtis violated his probation by unlawfully possessing cocaine on January 5, 2006, by

engaging in unlawful activities on January 19, 2007, and by admitting to alcohol consumption on January 31, 2006, January 18, 2007, and February 19, 2007. As a result, the court revoked Curtis' probation and ordered him to be sent to the Labette Correctional Conservation Camp but indicated that if Curtis failed to pass the physical test there, the court would require him to serve the underlying 40-month prison term.

### Analysis

Curtis appeals the district court's decision to revoke his probation on grounds that the court lacked jurisdiction and that the court erroneously relied on alleged illegal activity other than the January 5, 2006, conduct to support its decision. Because we conclude the district court did not have jurisdiction to revoke Curtis' probation in the first instance, we find it unnecessary to consider whether the court erred in relying on alleged illegal activity other than the January 5, 2006, conduct to support its decision.

A district court's determination regarding jurisdiction over a probation proceeding is reviewed de novo. *State v. Williams*, 20 Kan. App. 2d 142, 145, 884 P.2d 743 (1994).

In support of his claim that the district court was without jurisdiction to revoke his probation, Curtis asserts (1) the State failed to timely initiate revocation proceedings within his probationary term, and (2) even if timely initiated, the State failed to act in a timely and reasonable manner to revoke his probation, which violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### 1. Timely Initiation of Revocation Proceedings

A district court has jurisdiction to revoke probation as long as the proceedings are initiated within 30 days after the probationary term expires. K.S.A. 22-3716(d). Filing a motion to revoke probation is sufficient to institute a probation proceeding. *Williams*, 20 Kan. App. 2d at 147.

Here, Curtis' probation expired on November 18, 2006. The State filed motions to revoke Curtis' probation on (1) January 10, 2006; (2) February 22, 2006; (3) September 20, 2006; and (4) Jan-

uary 22, 2007. The first two motions were dismissed by the court at the State's request. No action was ever taken with regard to the September 20, 2006, motion, and it remained pending even after an identical January 22, 2007, motion to revoke was filed.

Curtis asserts that by filing a January 22, 2007, motion to revoke that was identical to the pending September 20, 2006, motion, the State effectively abandoned the first pleading. As a result, Curtis maintains that the only valid motion was the motion to revoke filed on January 22, 2007, which was more than 30 days after the probation period had expired. Based on the circumstances as alleged, Curtis argues the State failed to timely initiate revocation proceedings within his probationary term, leaving the district court with no jurisdiction to revoke his probation. We disagree.

As a preliminary matter, Curtis fails to cite, and we could not find, any support for the legal proposition that by filing a second motion, which is identical to a first motion, the first motion is deemed abandoned. In addition, there simply is no evidence here that the September 20, 2006, motion—which was filed before Curtis' probation had expired—was abandoned, vacated, withdrawn, or ruled upon. The mere fact that an identical motion to revoke was filed outside Curtis' probationary term does not work to extinguish the pending proceedings initiated by the earlier motion. For these reasons, we find the revocation proceedings were initiated in a timely manner.

### 2. Due Process

Although K.S.A. 22-3716(b) requires the court in a probation revocation proceedings to bring the defendant before it "without unnecessary delay for a hearing on the violation charged," Curtis does not base his jurisdictional challenge on this statutory provision. Instead, Curtis asserts the State violated his constitutional right to due process in failing to act in a timely and reasonable manner to revoke his probation. "The Due Process Clause imposes procedural and substantive due process requirements whenever the State deprives someone of liberty, such as through the revocation of an individual's probation. [Citation omitted.]" *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). The failure to act in

a timely and reasonable manner may divest the district court of jurisdiction to revoke probation if there is unreasonable delay, which must be determined on the circumstances of each case. 287 Kan. at 144-45.

Curtis asserts the delay between his arrest for participation in illegal activity on January 5, 2006, and the revocation of his probation on October 1, 2007—a total of almost 21 months—was unreasonable. In order to properly address this issue, we must first resolve a disagreement between the parties regarding the precise date upon which the probation revocation proceeding was initiated. We start with the facts. The State filed a total of four motions to revoke in a 12-month period. The first motion was filed on January 10, 2006, and was based on the January 5, 2006, alleged cocaine possession. On January 30, 2006, however, the court dismissed the probation revocation proceeding "upon request of the State." The second motion was filed on February 22, 2006, and was identical to the January 10, 2006, motion. On August 29, 2006, however, the court dismissed this second probation revocation proceeding "upon request of the State." The third motion was filed on September 20, 2006, and was identical to both of the previously filed and dismissed motions. Notwithstanding the pending motion, the fourth motion was filed on January 22, 2007, and was identical to the first three motions previously filed.

With regard to the applicable law, we find no case addressing the legal effect on a defendant's procedural due process rights when identical motions in a probation revocation proceeding are filed, dismissed, and refiled. We find very persuasive, however, a seemingly analogous rule of law on this issue set forth by our Supreme Court with regard to speedy trial time limitations:

"[T]he State cannot avoid the time limitations of K.S.A. 22-3402(2) [setting forth speedy trial deadlines] by dismissing an action and then refiling the identical charges against the same defendant, absent a showing of necessity. *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 278, 589 P.2d 626 (1979). Thus, under the rule of *Cuezze*, the time charged to the State in the first action is added to the time charged in the second action if the State fails to make a showing of necessity. However, if the first case is dismissed with a showing of necessity, computation of the statutory period commences anew upon arraignment in the refiled second

case. *State v. Ransom,* 234 Kan. 322, 325, 673 P.2d 1101 (1983), *cert. denied* 469 U.S. 818 (1984)." *State v. Jamison,* 248 Kan. 302, 304, 806 P.2d 972 (1991).

Applying this well-reasoned rule to the facts of our case, we turn to the prosecutor's proffered explanation regarding why the State filed and then requested dismissal of identical motions to revoke during the 8-month period from January 10, 2006, to August 29, 2006. At a hearing on Curtis' amended motion to dismiss, the prosecutor informed the court that the underlying illegal activity upon which the State's request for revocation was based had given rise to a new criminal charge, that Curtis had filed a motion to suppress in that new case, and that the State was waiting to see whether the court would suppress the evidence. We find no merit to this explanation. This is because a ruling on the motion to suppress in the new case was immaterial to a determination about whether Curtis violated the terms of his probation. In fact, our Supreme Court specifically has held that the exclusionary rule, which is designed to exclude evidence obtained as the result of unreasonable searches and seizures, generally does not apply to probation revocation proceedings. Evidence will be suppressed in a probation revocation proceeding only under circumstances where the illegal acts of police officers are so egregious that the need for their deterrence outweighs the court's need for information. *State v. Turner,* 257 Kan. 19, 27, 891 P.2d 317 (1995).

In this case, the State does not suggest it ever believed the district court, in ruling on the motion to suppress in the underlying criminal proceeding, would make a determination regarding whether the acts of law enforcement were so egregious that the need for their deterrence outweighed the court's need for information. In order to find reasonable the State's proffer that it was "necessary" to wait until the underlying suppression motion was decided, there must be some indication that the issue of outrageously egregious misconduct was expected to be raised in the underlying proceeding. The record discloses nothing of the sort; thus, waiting for a decision on the motion to suppress was an exercise in futility and worked only to unnecessarily delay the probation revocation proceedings. For this reason, we find it was not

necessary for the State to dismiss and then refile identical motions to revoke.

Absent a showing of necessity pursuant to the rule stated in *Jamison*, we conclude the delays attributed to the State prior to filing the third revocation proceeding on September 22, 2007, must be added to any subsequent delays that we find should be attributed to the State. As such, the question now presented is whether the 21-month delay in adjudicating the probation violation charges against Curtis constitutes a violation of his right to due process.

In order to accurately address the question presented, we find it necessary to briefly review the line of Kansas cases on the subject. This line of cases has created two alternative procedures for a probationer in Kansas to establish that a delay in pursuing adjudication of a probation violation is unreasonable, thus infringing upon his or her right to due process. More specifically, the delay is unreasonable where it prejudices the defendant or, alternatively, where there is an indication that the State has waived its right to pursue the violation. If the violation is found to be waived, the probationer is not required to establish prejudice.

The first case to squarely address this issue was *State v. Wonders*, 27 Kan. App. 2d 588, 8 P.3d 8, *rev. denied* 269 Kan. 940 (2000). On April 4, 1995, Wonders was granted 36 months' probation with an underlying sentence of 14 months in prison. Although Wonders violated one of the conditions of his probation in March 1996, the State took no action to revoke Wonders' probation at that time because his conviction was on appeal.

On January 23, 1998, Wonders' conviction was affirmed by the Kansas Supreme Court in *State v. Wonders*, 263 Kan. 582, 952 P.2d 1351 (1998). On April 3, 1998, the district court issued a bench warrant for Wonders' arrest based on the violation that had occurred 2 years earlier. The court then revoked Wonders' probation. Wonders appealed, claiming he was denied due process by the 2-year delay between his probation violation and initiation of the revocation proceedings. In support of his claim, Wonders cited two federal appellate court cases for the proposition that failure to exercise reasonable diligence to revoke parole in the face of a violation is fundamentally unfair and may result in a waiver by the

government to pursue the violation and loss of jurisdiction. See *United States v. Hamilton,* 708 F.2d 1412, 1414 (9th Cir. 1983); *United States v. Tyler,* 605 F.2d 851, 852 (5th Cir.1979).

A panel of our court rejected Wonders' due process claim on grounds that delay alone does not establish a due process violation. See *Wonders,* 27 Kan. App. 2d at 592. The court noted both the *Hamilton* and *Tyler* cases cited by Wonders were readily distinguishable based on specific findings therein of government delay *and* government waiver of the right to pursue revocation of probation. With regard to this issue, the court then drafted the following syllabus of the points decided in the case: "Delay between the time of a probation violation and the initiation of revocation proceedings does not constitute a due process violation unless prejudice to the defendant is shown by the delay, or there is an indication that the violation has been waived by the government." *Wonders,* 27 Kan. App. 2d 588, Syl. ¶ 5.

In 2002, a panel of our court relied on the waiver rule set forth in *Wonders* to hold that the State waived its right to revoke probation when it failed to fully investigate probationer's whereabouts. *State v. Haines,* 30 Kan. App. 2d 110, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002). Haines was convicted in November 1982, placed on probation for 2 years with out-of-state supervision, and fined $1,000. In October 1983, a probation violation warrant was issued for nonpayment of the fine imposed and for failing to report to the probation officer. The warrant was discovered by Ohio police 16 years later in 1999. Haines, now 68 years old with medical problems, returned to Kansas for the revocation hearing. The district court revoked Haines' probation and ordered him to serve the underlying prison sentence.

Our court reversed the district court's decision to revoke. 30 Kan. App. 2d at 113. In so doing, the court found the State's efforts to locate Haines were restricted to two letters, one sent to his ex-wife and one to his mother's residence that was returned for lack of a sufficient address. More than 16 years had gone by since the State acted. Haines had been employed as a truck driver and lived in Ohio the entire time preceding the probation revocation proceeding. There was no indication that the State attempted to locate

him through his driver's license, Social Security number, employer, or any means other than mailing letters to his mother's house and his ex-wife's house. At the time of the revocation hearing, Haines was still living in Ohio and was collecting Social Security benefits. Again, relying on the waiver rule set forth in *Wonders*, the court held the State's failure to conduct a reasonable investigation to ascertain Haines' whereabouts constituted a waiver of the violation. Since the State waived the violation, the court held that, pursuant to *Wonders*, Haines did not have to show he was prejudiced by the delay. *Haines*, 30 Kan. App. 2d at 113.

In 2008, a panel of our court relied on *Haines* to hold, under slightly different facts, that the State waived its right to revoke probation by failing to fully investigate probationer's whereabouts. *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008). After several prior extensions of Myers' probation, the State filed a motion to revoke on June 10, 2004, alleging Myers violated the terms of his probation. Although a bench warrant was issued for Myers' arrest on June 10, 2004, he was not arrested until more than 2 years later. On December 21, 2006, more than 2½ years after issuance of the warrant, the district court conducted a hearing and revoked Myers' probation. On appeal, our court reversed the revocation, finding the State had waived its right to pursue revocation because of a nearly complete absence of evidence as to efforts actually made by the State to find Myers. 39 Kan. App. 2d at 253-55.

The last in this line of cases is *Hall*, 287 Kan. 139, the only Kansas Supreme Court case discussing waiver by the State of the right to pursue a probation revocation. At issue in *Hall* was a 6-year delay between when a probation revocation warrant was first issued and when the warrant was finally executed. The State argued the delay did not violate Hall's right to due process because Hall was imprisoned in a different county on unrelated charges during the 6-year period and the State had lodged a detainer with such prison officials for custody of Hall immediately upon his release from incarceration.

Consistent with the United States Supreme Court case of *Moody v. Daggett*, 429 U.S. 78, 50 L. Ed. 2d 236, 97 S. Ct. 274 (1976),

the *Hall* court held that if an alleged probation violator is incarcerated as the result of a new felony conviction arising in another county, the State does not waive a probation violation if it lodges a detainer—but does not execute a probation violation warrant—while the alleged violator is imprisoned. 287 Kan. at 153. Finding no waiver, the court then went on to consider the alternative *Wonder* factor to determine whether delay constitutes a due process violation: whether prejudice resulted from the delay. *Hall*, 287 Kan. at 154 (quoting *Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5) ("no 'due process violation unless prejudice to the defendant is shown by the delay, or there is an indication that the violation has been waived by the government' "). The court found Hall failed to demonstrate any real prejudice. *Hall*, 287 Kan. at 154-56.

From the line of cases referenced above, we find the following legal rules have emerged with regard to due process and the State's waiver of the right to pursue probation revocation: (a) Due process demands that revocation proceedings be instituted during the term of the probation and that revocation occur within a reasonable time thereafter; (b) the failure to act in a timely and reasonable manner to pursue adjudication divests the district court of jurisdiction to revoke probation; (c) delay is unreasonable where it prejudices the defendant or if there is an indication that the State has waived its right to pursue the violation; and (d) if the violation is found to be waived, the probationer is not required to establish prejudice.

Here, Curtis does not argue he was prejudiced by the State's delay; rather, he argues the State waived the right to pursue revocation as a result of the violation. Thus, the issue is one of waiver. Although each of the cases cited above ultimately makes a legal finding as to whether the State has waived its right to pursue revocation of probation, none of the cases define waiver. Black's Law Dictionary 1611 (8th ed. 2004) defines waiver as the voluntary relinquishment of a known right. Waiver may be express or implied. " 'An implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it.' " Black's Law Dictionary 1611-12 (8th ed. 2004) (quoting 28 Am. Jur. 2d Estoppel and Waiver § 160, pp. 845-46

[1966]). Applying this definition in the context of whether the State has waived its right to pursue probation revocation, courts necessarily must consider the State's conduct to determine whether such conduct reflects (1) reasonable diligence in pursuing revocation or (2) unreasonable inaction in pursuing revocation, indicating implied waiver.

Although not explicitly mentioned, each of the referenced cases utilized this definition, at least in part, to determine whether the State waived its right to pursue revocation. Finding no waiver, the *Hall* court held that, although there was a 6-year delay in executing the probation violation warrant, the State's decision to lodge a detainer for custody of Hall immediately upon his release from incarceration on other charges demonstrated reasonable diligence on the part of the State to pursue revocation. See 287 Kan. at 153. In finding waiver, the *Myers* court held a 2-year delay in executing a violation warrant was unreasonable given a nearly complete absence of evidence as to efforts actually made by the State to attempt service. 39 Kan. App. 2d at 253-55. Again finding waiver, the *Haines* court held a 16-year delay in executing a violation warrant was unreasonable given there was no evidence that the State attempted to locate Haines through his driver's license, Social Security number, or his employer. 30 Kan. App. 2d at 113. And finally, finding no waiver, the *Wonders* court held that, although the State took no action to revoke Wonders' probation for over 2 years after Wonders violated, the delay was attributed to the State's decision to wait until Wonders' convictions became final on appeal. 27 Kan. App. 2d at 591-93. From this holding, we believe the court found the State adequately demonstrated reasonable diligence in pursuing Wonders' probation revocation.

Turning to the facts of our case, we are now ready to examine whether the evidence in the record demonstrates the State acted with reasonable diligence in pursuing Curtis' revocation or whether the State's inaction was unreasonable, indicating implied waiver. To that end, we again find it helpful to draw an analogy to speedy trial principles and, thus, apply a modified version of the speedy trial waiver test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct.

2182 (1972); see also 2 Cohen, The Law of Probation and Parole § 26:6, p. 26-17 (2d ed. 1999) (noting courts often consider some or all of the *Barker* factors to determine whether the delay in a final revocation hearing was unreasonable). The *Barker* factors include (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his or her right; and (4) prejudice to defendant. *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004). As noted above, Kansas law does not require a finding of prejudice in order to establish waiver of the right to pursue adjudication of a probation violation. *Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5. Thus, we will consider all but the prejudice factors set forth in *Barker* in our analysis. None of these factors, standing alone, is sufficient for finding a violation. Instead, the court must consider them together along with any other relevant circumstances. *Rivera*, 277 Kan. at 113.

### a. General Length of Delay

Curtis was arrested on January 5, 2006, for possession of cocaine with intent to sell. Based on this incident, a motion to revoke probation subsequently was filed. The matter was adjudicated and Curtis' probation was revoked on October 1, 2007. We find a delay of 21 months weighs against a finding of timely and reasonable pursuit of adjudication and in favor of waiver.

### b. Reason for Delay

### (1) January 5, 2006, to September 20, 2006

The State asserts the 8-month delay between January 5, 2006, to September 20, 2006, in the probation revocation proceedings was caused by the State's decision to wait for a determination regarding Curtis' motion to suppress in the underlying criminal case. As we found above, however, the legal standard of proof for suppressing evidence in a criminal matter is completely different from the legal standard of proof for suppressing evidence in a probation revocation hearing. Because there is no legitimate justification for the State's delay, we find this 8-month delay weighs against a finding of timely and reasonable pursuit of adjudication and in favor of waiver.

### (2) September 20, 2006, to January 22, 2007

After the State filed the September 20, 2006, motion to revoke, about a 4-month delay elapsed where no arrest warrant was issued and no other action to prosecute the motion was taken by the State. The prosecutor explained to the district court that this delay was "because of the attorneys trying to work it out." This seems to mean that some efforts were being made toward compromise. Curtis never disputed this statement. The law favors the compromise and settlement of controversies. *Bright v. LSI Corp.*, 254 Kan. 853, 858, 869 P.2d 686 (1994). Without any other facts suggesting neglect of Curtis' case or inaction by the State, we find this 4-month delay weighs in favor of a timely and reasonable pursuit of adjudication and against waiver.

### (3) January 22, 2007, to October 1, 2007

On January 22, 2007, the State filed a motion to revoke probation identical to the one it had filed September 20, 2006. The State amended its January motion twice to add other allegations. Thereafter, roughly 8 to 9 months elapsed until the district court finally adjudicated Curtis' alleged violation by revoking his probation. During this time period, the following events occurred.

First, on February 9, 2007, the district court scheduled an evidentiary hearing for March 8. Curtis then filed a motion to dismiss on February 21, 2007, alleging the January 22, 2007, motion to revoke was filed out of time. The district court ultimately continued the March 8 hearing, which the prosecutor explained was due to the court being in a jury trial. Curtis did not dispute this explanation. The district court reset the hearing for March 21.

On March 21, one of the State's witnesses was unavailable, so the State requested to continue the hearing until after March 24, which the district court granted. March 24 passed, but a new hearing was not scheduled. According to the prosecutor, the hearing "didn't get reset again." A 4-month delay followed with neither the State, the district court, nor Curtis taking any action.

Finally, on July 30, 2007, Curtis filed an amended motion to dismiss, which added a claim challenging the delay in his case. A hearing scheduled for August 6 was continued to August 24 due

to the district judge's absence. The district court then also continued the August 24 proceeding. Both parties claimed that on August 24 the other party requested an evidentiary hearing, apparently casting blame on each other for causing the continuance.

After two more continuances—one caused by the district judge being unavailable and one reportedly caused by Curtis' failure to appear—the district court held a hearing on September 20, 2007, with regard to Curtis' motions to dismiss. After denying the motion to dismiss, the court held the final revocation hearing on October 1, 2007.

Based on this chronology, we find (a) the delay from February 9, 2007, to March 24, 2007, weighs in favor of a timely and reasonable adjudication; (b) the delay from March 24, 2007, to August 6, 2007, weighs against a finding of timely and reasonable adjudication; and (c) the delay from August 6, 2007, to October 1, 2007, weighs in favor of a timely and reasonable adjudication.

Given these findings, we conclude that the reasons for 393 days of the delay in adjudicating this matter (258 days from January 5, 2006, to September 20, 2006, and 135 days from March 24, 2007, to August 6, 2007) must be attributed to the State for its unreasonable failure to pursue adjudication of the case. We find the lack of a legitimate reason for this approximately 13-month delay weighs against a finding of timely and reasonable pursuit of adjudication and in favor of waiver.

### c. Defendant's Assertion of His Right

It is the State's responsibility to pursue adjudication of a probation violation in a timely manner. *State v. Rocha*, 30 Kan. App. 2d 817, Syl. ¶ 6, 48 P.3d 683 (2002). In order to determine whether a probationer's right to a timely adjudication has been violated, we consider whether the probationer affirmatively has asserted his right to such timely adjudication. " '[F]ailure to assert the right will make it difficult for a [probationer] to prove that he [or she] was denied [timely adjudication of his violation].' " *State v. Fitch*, 249 Kan. 562, 565, 819 P.2d 1225 (1991) (quoting *Barker*, 407 U.S. at 532) (applying factor in context of right to speedy trial).

Here, the record reflects Curtis filed a motion to dismiss based on untimeliness of the probation charges on February 21, 2007. Curtis filed an amended motion to dismiss 5 months later on July 30, 2007, this time asserting an unconstitutional delay in adjudicating his alleged violation. Based on these filings, we conclude Curtis affirmatively asserted, on more than one occasion, his right to timely adjudication of his violation. Accordingly, this factor weighs in Curtis' favor.

In summarizing the factors set forth above, we find (1) a time period of 616 days elapsed between Curtis' arrest and adjudication of his probation violation; (2) a 393-day delay in the adjudication can be attributed to an unreasonable failure by the State to pursue Curtis' case; and (3) Curtis made an affirmative assertion of his right to timely adjudication on more than one occasion. Our evaluation of these factors strongly support a finding that the State failed to act in a timely and reasonable manner in pursuing the adjudication of the probation violation. We find the State's failure in this regard represented an implied waiver on the part of the State to pursue the violation; thus, the court's decision to go forward with the revocation proceeding violated Curtis' right to due process. Accordingly, we reverse the probation revocation and vacate the order to serve the underlying sentence. Given this outcome, and as noted above, it is unnecessary for us to consider Curtis' claim that the court erroneously relied on alleged illegal activity other than the January 5, 2006, conduct to support its revocation decision.

Judgment reversed and order vacated.