NOT DESIGNATED FOR PUBLICATION

No. 115,549

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRODERICK W. BRASWELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed April 7, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and GARDNER, JJ.

*Per Curiam*:  Broderick W. Braswell appeals the district court's decision revoking his probation and ordering him to serve a modified prison sentence. The only claim Braswell makes on appeal is that the district court lacked jurisdiction to revoke his probation because of the State's unreasonable delay in prosecuting his probation violation. For the reasons stated herein, we reject Braswell's claim and affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 22, 2010, Braswell pled guilty in Wyandotte district court to eluding a police officer, a severity level 9 person felony, and leaving the scene of an injury accident, a class A misdemeanor. On June 15, 2010, the district court sentenced Braswell to 15 months' imprisonment for the felony conviction and a consecutive term of 12 months in jail for the misdemeanor conviction. The district court placed Braswell on probation for 12 months to be supervised by community corrections. As conditions of his probation, Braswell was ordered to report to his intensive supervision officer (ISO) as instructed and to notify his ISO before changing his address or phone number.

On January 7, 2011, the State filed a motion to revoke Braswell's probation. The State alleged that Braswell failed to maintain contact with his ISO, failed to submit to UAs, failed to notify his ISO of any change in address, and failed to pay his court costs. The State indicated it had made the following unsuccessful efforts to contact Braswell: (1) On September 20, 2010, the ISO sent a letter to Braswell's last known address; (2) on December 9, 2010, the ISO attempted a home visit to Braswell's last known address; and (3) on December 15, 2010, the ISO sent another letter to Braswell's last known address. Based on the motion, the district court granted a bench warrant for Braswell's arrest.

On March 21, 2013, Braswell filed a motion with the district court for the appointment of counsel. In the motion, Braswell stated that he was in federal custody and serving a 60-month sentence in the Leavenworth Federal Penitentiary for felony convictions of possession of a firearm and attempted distribution of a controlled substance. Braswell stipulated that these new convictions were violations of his probation and asked the district court to hold a probation revocation hearing. Braswell wanted his underlying sentence in state court to run concurrently with his federal sentence.

2

The district court responded in a letter to Braswell informing him that Kansas law does not provide a mechanism to bring someone from federal prison to deal with a probation violation. The letter explained that Kansas law only permits a prisoner to be brought to Kansas from federal prison to adjudicate an untried information or complaint. Thus, the district court denied Braswell's request for a probation revocation hearing.

On November 13, 2015, the State filed an amended motion to revoke Braswell's probation based on his federal crimes. On November 20, 2015, after Braswell had completed his federal sentence, the district court held a probation revocation hearing. Braswell appeared in person and was represented by counsel. Braswell did not contest the alleged probation violation, but he argued that the district court lacked jurisdiction to revoke his probation because of the State's delay in prosecuting his probation violation. The district court rejected Braswell's argument, finding there had been no mechanism to bring Braswell back from federal prison any sooner to address a probation violation. The district court revoked Braswell's probation and ordered him to serve a modified sentence of 15 months' imprisonment by ordering that his sentences on the two counts run concurrently. Braswell timely appealed the district court's judgment.

DID THE DISTRICT COURT LACK JURISDICTION TO REVOKE BRASWELL'S PROBATION?

On appeal, Braswell contends that the district court lacked jurisdiction to revoke his probation because of the State's unreasonable delay in prosecuting his probation violations. Specifically, Braswell argues that the State's delay in prosecuting his probation violations "violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and § 18 of the Kansas Constitution Bill of Rights, which guaranteed him 'justice without delay.'" The State asserts that Braswell is attempting to raise a new issue on appeal that was not raised in district court. On the merits, the State argues that the district court properly revoked Braswell's probation.

3

Whether a district court has jurisdiction over a probation revocation proceeding is a question of law subject to unlimited appellate review. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). Moreover, an appellate court has unlimited review over whether a due process violation has occurred. 287 Kan. at 143.

Generally, an issue not raised in district court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Here, the record reflects that after the district court revoked Braswell's probation and imposed a modified sentence at the probation revocation hearing, Braswell—without assistance from his attorney—asked the district court to reconsider because of the State's delay in prosecuting his probation violation. Braswell cited this court's decision in *State v. Curtis*, 42 Kan. App. 2d 132, 209 P.3d 753 (2009), to support his request. The district court told Braswell that *Curtis* did not apply to him because under Kansas law, a defendant held in federal custody cannot be brought to state court to address a probation violation. The district court told Braswell that if he disagreed, he could appeal the district court's decision. While Braswell did not precisely frame his argument in district court as a jurisdictional or due process issue, he sufficiently raised the argument below to preserve it for appellate review. Moreover, as Braswell points out on appeal, issues of jurisdiction can be raised at any time. *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010).

Turning to the merits of Braswell's claim, Kansas law provides that once probation has been granted to a defendant, he or she acquires a conditional liberty interest, which is subject to substantive and procedural due process limitations on its revocation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). As explained by this court in *Curtis*:

> "The Due Process Clause of the Fourteenth Amendment to the United States
> Constitution imposes procedural and substantive requirements when the State deprives
> someone of liberty, such as through the revocation of the individual's probation. The
> failure to act in a timely and reasonable manner to pursue the adjudication of a probation

4

violation violates the Due Process Clause and divests the district court of jurisdiction to revoke probation." 42 Kan. App. 2d 132, Syl. ¶ 2.

Under Kansas law, there are two ways for a defendant to establish a due process violation because of the State's delay in prosecuting a probation violation. First, the defendant can show that the State waived its right to prosecute the violation, in which case the defendant does not need to show prejudice. 42 Kan. App. 2d at 139. Second, the defendant can establish that the delay was unreasonable because it prejudiced the defendant. 42 Kan. App. 2d at 139. Braswell claims that he prevails under either method.

*Did the State waive its right to prosecute Braswell's probation violation?*

Braswell claims that the 4-year delay between the State's motion to revoke his probation and his probation revocation hearing was unreasonable. Braswell concedes that the State made "some efforts" to prosecute the probation violation when it first occurred in 2011, but he points to the fact that the record is devoid of any attempts to locate him through his driving record, social security number, or employer. Moreover, even after the State became aware that Braswell was incarcerated at Leavenworth, the State did not respond to Braswell's request to resolve the probation issue, nor is there any evidence in the record that the State filed a detainer. Thus, Braswell claims, the State impliedly waived its right to prosecute Braswell's probation violation, and the district court was without jurisdiction to revoke probation and impose Braswell's underlying sentence.

The State argues that it undertook reasonable efforts to locate Braswell. The State asserts that although there is no "specific evidence" of a detainer in the record, there is indirect evidence that the State did in fact lodge a detainer against Braswell. Furthermore, the State argues, because Braswell was incarcerated in federal prison, the State could not have prosecuted Braswell's probation violation any sooner because the Agreement on Detainers does not permit the State of Kansas to bring back a defendant incarcerated in

5

other jurisdictions, including federal prison, for a probation violation hearing. Thus, the State asserts that it took reasonable efforts to locate and bring back Braswell for the revocation motion, and it did not waive its right to prosecute the probation violation.

When determining whether the State has waived its right to prosecute a probation revocation, courts necessarily must consider the State's conduct to determine whether such conduct reflects (1) reasonable diligence in pursuing revocation or (2) unreasonable inaction in pursuing revocation, indicating implied waiver. *Curtis*, 42 Kan. App. 2d at 143. Whether the State's delay was reasonable depends upon the facts of each case. *Hall*, 287 Kan. at 145.

Braswell relies on this court's decision in *Curtis* to support his argument that the State waived its right to prosecute his probation violation. In *Curtis*, this court examined whether the State waived its right to prosecute a probation violation where there was a 616-day delay between the probation violation and the adjudication of the violation. This court utilized a modified version of the speedy trial test in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2128, 33 L. Ed. 2d 101 (1972), to determine whether the State exercised reasonable diligence in adjudicating the defendant's probation violation. 42 Kan. App. 2d at 143-44. Specifically, this court considered the length of the delay, the reason for the delay, and whether the defendant asserted his right to a timely adjudication. 42 Kan. App. 2d at 144. Ultimately, this court ruled that the State's delay constituted a violation of the defendant's due process rights because the State had no reasonable explanation for 393 days of the 616-day delay, and the defendant had filed two motions to dismiss because of the long delay. 42 Kan. App. 2d at 147.

Braswell's case is distinguishable from *Curtis* primarily because Braswell was incarcerated in federal prison during the period of time that the motion to revoke his probation in state court was pending. Unlike the situation in *Curtis*, the State knew where

6

Braswell was located but claims it could not adjudicate his probation violation any sooner because Braswell was serving a 60-month sentence in federal prison.

The Kansas Supreme Court addressed whether the failure to serve a probation revocation warrant on a probationer incarcerated in a different county constituted a waiver of the State's right to prosecute the probation violation in *Hall*. In that case, the defendant was convicted and granted probation in McPherson County. He subsequently committed a crime in Saline County, was convicted, and was sent to state prison as a result of the new conviction. 287 Kan. at 140. Based on the defendant's new conviction, the State filed a probation violation warrant against the defendant in the McPherson County case. The State made no effort to execute the warrant, but it "apparently lodged a detainer with prison officials who had custody of [the defendant] under the authority of the Saline County sentence." 287 Kan. at 140. The warrant was not served on the defendant until 6 years later when he was released from prison. 287 Kan. at 140. At the probation revocation hearing, the district court revoked the defendant's probation and imposed his underlying sentence. 287 Kan. at 142.

On appeal, the Kansas Supreme Court noted that there was no direct evidence in the record reflecting that the State had lodged a detainer with prison officials concerning the defendant's probation violation. Nevertheless, the court accepted the fact that a detainer had been lodged against the defendant because the record contained "indirect references to the detainer," including a letter from the defendant asking for appointment of counsel to resolve the pending probation revocation motion. 287 Kan. at 140-41. The court ultimately concluded that the State did not waive the right to prosecute the defendant's probation violation by failing to execute the warrant while the defendant was serving a sentence for an unrelated conviction from another county. 287 Kan. at 153. Specifically, the court held:

"[I]f an alleged probation violator is incarcerated as a result of a new felony conviction arising in another county, the State does not waive a probation violation if it lodges a detainer but does not execute a probation violation warrant while the alleged violator is imprisoned on a consecutive sentence." 287 Kan. at 153.

*Hall* stands for the proposition that the filing of a detainer against a defendant being held in state prison is sufficient to prevent the State's waiver of its right to prosecute a probation violation. Thus, if the State did in fact lodge a detainer against Braswell, under *Hall*, the State did not waive its right to prosecute the probation violation, and the district court had jurisdiction to revoke Braswell's probation and order that he serve his underlying sentence.

Here, however, the parties dispute whether the State lodged a detainer against Braswell, and Braswell points to the fact that there is no detainer included in the record on appeal. But as in *Hall*, the record herein includes indirect evidence supporting a conclusion that a detainer was in fact lodged against Braswell. Braswell filed a motion to appoint counsel on March 21, 2013, acknowledging that he violated his probation by committing new crimes and requesting the adjudication of his probation violation in Wyandotte County. In the letter, Braswell specifically states that "[c]ertain programs for rehabilitation and halfway house are not available to the Defendant because of the outstanding case in this Honorable Court." Just as in *Hall*, these facts support the existence of a detainer because they explain how Braswell came to be aware of the proceedings against him in Wyandotte County.

Nonetheless, even if the State failed to lodge a detainer against Braswell, this situation is distinguishable from *Hall* because Braswell was incarcerated in federal prison. As noted by the district court, if a prisoner is incarcerated in another county in Kansas, the Uniform Mandatory Disposition of Detainers Act (UMDDA) applies, and the defendant may request final disposition of any "untried indictment, information, motion

8

to revoke probation or complaint pending against such person in this state." K.S.A. 2016 Supp. 22-4301(a). Thus, if Braswell had been in a Kansas prison, the State could have adjudicated his probation violation because he could have been transported to Wyandotte County for a probation violation hearing.

If, however, a prisoner is incarcerated in another state or in federal prison, the Agreement on Detainers applies, and the prisoner can only request final disposition of an untried information, indictment, or complaint. K.S.A. 22-4401; see also *State v. Waldrup*, 46 Kan. App. 2d 656, 669-70, 263 P.3d 867 (2011) (explaining that the UMDDA applies to inmates confined in a penal or correctional institution in the State of Kansas, while the Agreement on Detainers applies to inmates confined in penal or correctional institutions in another state or in a federal penitentiary). Because Braswell was in federal prison, there was no mechanism for the adjudication of his probation violation until he completed his federal sentence. See K.S.A. 22-4401.

Here, the State acted with reasonable diligence in prosecuting Braswell's probation violation. The State made reasonable efforts to locate Braswell when the motion to revoke probation initially was filed. Once the State determined that Braswell was incarcerated in federal prison, it appears that the State lodged a detainer to hold Braswell for the probation violation. But even if the State failed to lodge a detainer, Braswell was incarcerated in federal prison and subject to the Agreement on Detainers, which provided no mechanism for adjudicating his probation violation matter until he completed his federal sentence. Once Braswell completed his federal sentence, he immediately was returned to Wyandotte County for his probation revocation hearing. Under the facts and circumstances of this case, we conclude that the State did not waive its right to prosecute Braswell's probation violation.

9

*Did the delay prejudice Braswell?*

Braswell next argues that even if the State did not waive its right to prosecute his probation violation, the delay prejudiced him and violated his due process rights. Braswell first claims that the State's delay prejudiced him because it deprived him of the possibility of serving his state sentences concurrently with his federal sentence. Second, Braswell claims that he was prejudiced by the delay because he was denied participation in certain federal prison programs. Third, Braswell claims that he was prejudiced by the anxiety that resulted from not knowing how his case would be resolved. Finally, Braswell claims that he was prejudiced by the State's delay because it impaired his ability to present mitigating evidence. The State does not address Braswell's prejudice argument.

Braswell first claims that the State's delay prejudiced him because it deprived him of the possibility of serving his state sentences concurrently with his federal sentence. Our Supreme Court rejected this argument in *Hall* and held that the loss of the possibility of serving sentences concurrently is not prejudicial to the defendant. 287 Kan. at 155. Braswell attempts to distinguish his case from *Hall* by pointing out that the holding in that case only applies to felony sentences and Braswell also was serving a misdemeanor sentence. However, any such distinction is irrelevant because the district court ultimately modified Braswell's sentences and ordered that his sentence for his misdemeanor conviction run concurrently with his sentence for his felony conviction.

Braswell next claims he was prejudiced by the delay because he was denied participation in certain federal prison programs. But as our Supreme Court stated in *Hall*, there is no liberty interest in participation in federal prison programs because corrections officials "have discretion in determining what programs will be available and who will qualify for those programs." 287 Kan. at 154. Because Braswell had no liberty interest in participating in prison programs, he cannot claim his due process rights were violated.

10

Braswell also claims that he was prejudiced by the anxiety that resulted from not knowing how his case would be resolved. Again, our Supreme Court in *Hall* rejected this argument because "'[a] defendant incarcerated for a reason other than the delay in the hearings cannot properly attribute his anxiety at being incarcerated—or the prejudice it implies—to the hearing delays.' [Citation omitted.]" 287 Kan. at 154-55.

Finally, Braswell claims that he was prejudiced by the State's delay because it impaired his ability to present mitigating evidence at his probation revocation hearing. However, Braswell admits that he cannot point to any actual loss of evidence caused by the delay in his probation revocation proceedings. Thus, the record does not support Braswell's claim of prejudice on this ground. Moreover, we note that the district court apparently recognized some mitigating circumstances when it modified Braswell's sentences on the two counts by ordering that they run concurrently.

In sum, the State did not waive its right to prosecute Braswell's probation violation, and Braswell is unable to show any prejudice caused by the delay. Thus, we conclude that Braswell did not suffer any due process violation, and the district court did not lose jurisdiction to revoke Braswell's probation.

Affirmed.