NOT DESIGNATED FOR PUBLICATION

No. 122,706

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TREMAYNE M. DARKIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed April 9, 2021. Reversed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN and HILL, JJ.

PER CURIAM: In this appeal of the revocation of his probation, Tremayne Darkis makes three arguments why we should overturn the court's ruling sending him to prison. Darkis first contends that under K.S.A. 2020 Supp. 22-3716(e), the district court lost jurisdiction over him once it failed to issue a warrant for his arrest or a notice to appear within 30 days after his probation ended. After that, he contends no substantial competent evidence supports the court's finding that he absconded. And he argues the State did not show by a preponderance of the evidence that he had committed a new crime while on probation. Our interpretation of the statute differs from Darkis', and we hold the court did

1

have jurisdiction over the question of revoking his probation. But we agree with Darkis that insufficient evidence supports the court's finding that he absconded or that he committed a new crime. We reverse and remand.

*Case history*

The court sentenced Darkis to 30 months in prison for one count of possession of marijuana with two or more prior convictions. It suspended his prison incarceration and placed him on 12 months' probation. As conditions of his probation, Darkis had to obey all laws, refrain from using illegal drugs, attend drug treatment, and report to his intensive supervision officer as directed. His 12-month probation began October 9, 2018.

After the expiration of this 12-month probation, on October 16, 2019, Darkis' intensive supervision officer filed an arrest and detain notice to law enforcement agencies alleging that Darkis had violated the conditions of his probation. In an attached affidavit, the officer stated Darkis had:

- failed to report—he was released from federal custody on June 24, 2019, had not contacted his ISO, and his whereabouts were unknown;
- violated the law—he was arrested for possession of drug paraphernalia on April 2, 2019, though he not yet been charged;
- failed to complete drug treatment; and
- failed to pay court costs and fees.

Upon his return to district court, Darkis contested the allegations made by the intensive supervision officer, and the court took evidence on the question. The supervision officer testified that Darkis did not report from June 24, 2019 (when Darkis was released from federal custody) until October 11, 2019. The officer did not know where Darkis was during that period. The officer also stated he had learned that Darkis

had been arrested in April 2019, but no charges had been filed as the police were waiting on test results. It was his understanding that Darkis had violated the law.

Darkis testified that in April 2019, he was in a vehicle with another person and both he and the other person were arrested for possession of marijuana. Both were then released from the Sedgwick County jail with no charges filed. Two weeks later, he was taken into federal custody. While in federal custody in Louisiana, he was "not thinking about my state probation."

The court decided that Darkis had violated the terms of his probation. It ruled that Darkis had absconded by failing to report to his probation officer for five to six months. In other words, failing to report is the same as absconding. From the bench, the court made no finding that Darkis had committed a new crime, but in its journal entry of the probation violation hearing, the court checked the box showing that Darkis had committed a new crime. The court then revoked Darkis' probation and ordered him to serve his prison sentence.

*The district court did not lose jurisdiction.*

To resolve Darkis' first issue, we are asked to interpret K.S.A. 2020 Supp. 22-3716. This is a question of law, and we exercise unlimited review over such questions. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). In other words, what did the Legislature want to be accomplished through enacting this law?

To find this intent, courts must consider all parts of a statute to fully understand the intent of the Legislature with a view of reconciling and bringing all provisions of a law into a workable harmony. We must also construe statutes to avoid unreasonable or

3

absurd results. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015). In our hunt for Legislative intent, we will first examine the details of the statute and then review several cases that have looked at the law under different circumstances.

The statute we will review—K.S.A. 2020 Supp. 22-3716—is found in Chapter 22 of our Code of Criminal Procedure. It is in Article 37 that deals with release procedures. Two subjects found among the many in the subject title of the law are pertinent here: arrest for violating conditions of probation, and the time limit on issuing a warrant. The statute has eight subsections—(a) through (h). We look at two: (a) and (e).

Subsection (a) is long. Using terms that reflect two sentencing systems—indeterminate and determinate sentencing—the statute begins by referring to defendants who committed crimes before July 1, 1993, and to defendants who committed crimes after July 1, 1993. This is when Kansas sentencing guidelines or determinate sentencing first took effect and replaced the older indeterminate system. Even so, under both systems the statute commands *when* a warrant for the arrest of a probationer or a notice to appear may be issued—either while the defendant is on probation (for those who committed crimes before July 1, 1993), or while serving a nonprison sanction (for those who commit crimes after July 1, 1993):

> "(a) At any time during probation, assignment to a community correctional services program, suspension of sentence or pursuant to subsection (e) for defendants who committed a crime prior to July 1, 1993, and at any time a defendant is serving a nonprison sanction for a crime committed on or after July 1, 1993, or pursuant to subsection (e), the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment, a notice to appear to answer to a charge of violation or a violation of the defendant's nonprison sanction." K.S.A. 2020 Supp. 22-3716(a).

This means that no matter when the crime was committed—before or after sentencing guidelines—the defendant had to be either on probation (or any of the other choices) or serving a nonprison sanction before a court could issue a warrant because of a violation of a defendant's terms of release.

Both sentences are in the present tense. In other words, the court could not issue a warrant if the defendant was not on probation or not serving a nonprison sanction. And, importantly, both sentences are supplemented by referring to subsection (e) of the statute.

Subsection (e) extends the timeframe to issue a warrant or notice to appear by 30 days following the end of the offender's probation:

> "The court shall have *30 days following the date probation*, assignment to a community correctional service program, suspension of sentence or a nonprison sanction *was to end* to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction." (Emphasis added.) K.S.A. 2020 Supp. 22-3716(e).

This subsection gives a court another 30-day period to act to enforce probation terms.

This period prevents offenders from violating their probation in the last few days of the probation term with impunity. *State v. Gordon*, 275 Kan. 393, 399, 66 P.3d 903 (2003). In fact, unless the K.S.A. 2020 Supp. 22-3716(e) 30-day period applies, a court's jurisdiction over a probationer ceases with the termination of the probationary period. *State v. Cisneros*, 36 Kan. App. 2d 901, 903, 147 P.3d 880 (2006).

5

*Subsection (a) also permits supervising officers to arrest probationers.*

The fourth sentence in subsection (a) is about *who*, other than the court, has the authority to detain probationers to answer for their probation violations. This law allows a court services officer or a community correctional services officer to do so. This option appears to be an alternative to an arrest warrant issued by a court:

> "*Any court services officer or community correctional services officer may arrest the defendant without a warrant or may deputize any other officer with power of arrest to do so by giving the officer a written or verbal statement setting forth that the defendant has, in the judgment of the court services officer or community correctional services officer, violated the conditions of the defendant's release or a nonprison sanction.* A written statement delivered to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. After making an arrest, the court services officer or community correctional services officer shall present to the detaining authorities a similar statement of the circumstances of violation." (Emphasis added.) K.S.A. 2020 Supp. 22-3716(a).

In other words, the supervising officers can either arrest the defendants or seek the help of officers who legally have arrest powers to detain probationers.

In Darkis' view, the statute only permits the supervising officer to arrest or enlist the aid of those with arrest powers to detain a defendant. He extends this argument by saying that according to this law, there is no power given to probation supervisors to issue an arrest warrant—only a judge could issue a warrant. Thus, the 30-day period given in subsection (e) allowing the court to issue a warrant cannot apply to the actions of probation officers or intensive supervision officers. Since the ISO in Darkis' case filed the arrest and detain notice *after* his probation term had ended and the court never issued any warrant, the court no longer had jurisdiction over him. Simply put, there were no more probation terms for the court to enforce.

6

In response, the State contends that probation officers and intensive supervision officers are the arms of the court and that subsection (e) should not be read to mean just "judge."

*We are unpersuaded by Darkis' interpretation of the statute.*

After looking carefully at the statute and considering the caselaw mentioned above, our interpretation of subsection (a) as extended by subsection (e) differs from Darkis'. We first note that the sentence in subsection (a) authorizing court services officers and community correctional services officers to arrest and detain probationers for a violation of their probation, by itself, contains no time limitation. Two possible interpretations arise. Either court services officers are bound by the timeframe stated in the first sentence of subsection (a)—during the term of probation, which is extended by subsection (e)—or court services officers are not bound by any time limit. In other words, they have the same time limit as the court, or they have no time limit at all.

We reject the second interpretation. Such a view leads to an absurd result. If that view was valid, then a court services officer could issue an arrest and detain notice for probation violations more than 30 days after the probation term had expired. But a court could not issue an arrest warrant for the same violations because the 30-day time limit established in subsection (e) had expired. An officer of the court has no more power than the court the officer serves.

This error arises from reading a small portion of the statute without considering the surrounding context. It is unreasonable to hold that the Legislature intended to place a time limit on the court's ability to issue a warrant for the arrest of a probation violator but permit court services officers unlimited time to arrest the same probation violator. Thus, the time limit expressed in the first sentence of subsection (a), as extended by subsection (e), applies to the entire statutory scheme. The Legislative intent was to prevent

7

probationers from violating their probation during the last days of their probation with impunity.

We interpret K.S.A. 2020 Supp. 22-3716(a) to avoid an absurd result. During the term of probation or within 30 days of its expiration, a court services officer or an intensive supervision officer may arrest a probationer or seek the help of others with arrest powers to detain the probationer.

This interpretation of the statute is supported by existing caselaw construing subsection (e) of the statute. In *Gordon*, our Supreme Court examined the history that led to the Legislature adding subsection (e) to the statute. Before that addition, a panel of this court had held that the plain language of the statute precluded the court's jurisdiction over a case once the term of probation ended. The judge and one of the attorneys in that case both testified at the House Judiciary Committee meeting discussing the statutory amendment. The minutes from that meeting stated, "'Judge James Buchele informed the Committee HB 2752 would amend the statute to allow the court and/or court services a period of time following probation in which to file a motion to terminate.'" 275 Kan. at 399.

After considering that history, our Supreme Court determined the Legislature's purpose in enacting the amendment was to prevent an offender from violating his or her probation in the last few days of the probation term with impunity. 275 Kan. at 398-99. The court then held that because the State had filed a motion for revocation within the 30-day window, the later revocation of Gordon's probation was within the jurisdiction of the district court. 275 Kan. at 400-01.

Three other cases support our view. In *State v. Skolaut*, 286 Kan. 219, 231, 182 P.3d 1231 (2008), the court suggested that the district court had jurisdiction over a probationer "as long as a warrant, petition, or show cause order has been filed" within the

8

30-day window. In *State v. Hoffman*, 45 Kan. App. 2d 272, 276, 281, 246 P.3d 992 (2011), this court found that the district court had jurisdiction to revoke an offender's probation so long as the proceedings were commenced within 30 days after the probation term expired. In *State v. Curtis*, 42 Kan. App. 2d 132, 135, 209 P.3d 753 (2009), this court found that the State moving to revoke probation within that 30 days was sufficient to begin the proceedings.

We hold that the district court had jurisdiction to hear this matter because the intensive supervision officer issued the arrest and detain notice within the 30-day period granted by subsection (e).

*Insufficient evidence supports the court's finding that Darkis absconded.*

Darkis presses two points in this issue. First, he contends the State did not prove that he had absconded from supervision because no evidence showed that he had sought to avoid detection. Secondly, he alleges that the district court's absconder finding depended on an error of fact—that Darkis had failed to report for longer than he did report. The State admits this is a close call, but argues the continual failure to report for more than three months was sufficient evidence for the court to find that Darkis was an absconder.

Here, the district judge candidly explained his view that failing to report equated to absconding:

> "I never will be an individual that believes failing to report is a technical violation of probation. . . . when you are released from custody for a period of five to six months and fail to make contact with your state probation officer, knowing that you are on probation, that is willfully absconding."

9

But that belief does not reflect the law.

To invoke the absconder exception to the statutory intermediate sanction scheme, the State must show the probationer "engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process, such as intentionally avoiding probation supervision by hiding within or secretly leaving the jurisdiction." *State v. Dooley*, 308 Kan. 641, Syl. ¶ 4, 423 P.3d 469 (2018). Absconding is not simply that the probationer failed to attend a meeting with a probation officer or could not be located for a brief period. *Dooley*, 308 Kan. at 657. In *Huckey*, 51 Kan. App. 2d 451, 458, 348 P.3d 997 (2015), this court held that evidence a probationer failed to report to his ISO for more than four months did not establish that he absconded.

The record shows that Darkis did not report from June 24, 2019 to October 11, 2019—less than four months. He testified he was "not thinking about my state probation." No evidence shows that he had an intent to hide from or otherwise evade his probation officer. The district court's absconder finding was not supported by substantial competent evidence.

This means the court could not use this erroneous finding to bypass intermediate sanctions. K.S.A. 2017 Supp. 22-3716(c) limits a court's discretion in deciding how to sanction a felony probation violator. Under the statute, a sentencing court should impose a series of intermediate, graduated sanctions before ordering a probation violator to serve his or her underlying sentence, unless an exception applies. For example, the district court need not impose any intermediate sanction if the offender "absconds from supervision" or "commits a new felony or misdemeanor" while the offender is on probation. K.S.A. 2017 Supp. 22-3716(c)(8)(A), (B). This brings us to the third issue raised by Darkis.

10

*The State did not prove Darkis committed a new crime.*

Darkis contends that the State failed to prove by a preponderance of the evidence that he committed a new crime, noting that probable cause for an arrest is a lesser standard of proof than preponderance of evidence. The State acknowledges that the district court did not make a new crime finding at the revocation hearing, but argues the court could still invoke the exception on the journal entry citing *State v. Lawrence*, No. 120,718, 2020 WL 4250493 (Kan. App. 2020) (unpublished opinion). The State also argues substantial competent evidence supported the court's new crime finding.

The intensive supervision officer who testified had scant information on Darkis' arrest in April 2019. In his affidavit, he stated Darkis had been arrested for "Use/possess w/intent drug paraphernalia into the human body." He testified that he talked to the Sedgwick County Sheriff's Office and learned they were "waiting on the marijuana and cocaine to come back from the forensic lab before filing the case."

At the hearing, the ISO reiterated that no charges had been filed in that case because officers were awaiting the results of some testing. That was the extent of his knowledge about the alleged new crime. There was no evidence of preliminary testing done or statements from the arresting officers. The State offered nothing else to show Darkis had committed a new crime.

Darkis testified he and another person had been in a vehicle together and both were arrested by Sedgwick County officers for marijuana possession. He did not admit committing the crime. He was released without charges being filed. He was taken into federal custody a couple of weeks later, presumably on a probation violation though it was not clear. The State did not show by a preponderance of the evidence that Darkis had committed a new crime while on probation.

11

While the State did not have to prove that Darkis had been convicted of a new crime, it did have to prove that Darkis committed the new crime by a preponderance of the evidence. A preponderance of the evidence is evidence that shows a fact is more probably true than not true. Probable cause to arrest a person is a lesser burden of proof than preponderance of the evidence. The mere fact that officers had probable cause to arrest Darkis and another individual is insufficient to satisfy the preponderance standard, particularly when the officials did not even have enough information to file charges. A pair of cases make this point clear. In *State v. Lloyd*, 52 Kan. App. 2d 780, 782-83, 375 P.3d 1013 (2016), the court held that probable cause to be bound over is insufficient to satisfy the preponderance burden. In *State v. Oaks*, No. 118,267, 2018 WL 5728471, at *2 (Kan. App. 2018) (unpublished opinion), the panel held that probable cause to arrest is insufficient to satisfy a preponderance of the evidence burden.

The case the State relies on offers no support for its position on this issue. In *Lawrence*, there was no factual dispute that Lawrence had committed a new crime while on probation. Lawrence had *stipulated* to receiving a new *conviction* for possession of marijuana. And the court accepted his stipulation. 2020 WL 4250493, at *1. There, the panel held the district court properly invoked the new crime exception on its journal entry to support its revocation of probation from the bench. 2020 WL 4250493, at *3. There is no stipulation by Darkis in this case. The State did not prove that he had committed a new crime by a preponderance of the evidence. Thus, the court could not use the new crime exception to bypass intermediate sanctions either from the bench or in its journal entry.

Because the court did not properly invoke either the absconder or new crime exception to the statutory intermediate sanction scheme, this case must be remanded.

Reversed and remanded with directions for the court to consider imposing intermediate sanctions.