NOT DESIGNATED FOR PUBLICATION

Nos. 126,421
126,422

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH NATHANIEL TALLIE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Crawford District Court; RICHARD B. WALKER, judge. Submitted without oral argument. Opinion filed May 23, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant, and *Joseph N. Tallie*, appellant pro se.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Joseph Nathaniel Tallie appeals the district court's imposition of an additional 12-month term of probation after a finding he violated his probation. He argues that the State waived its ability to pursue his probation violations by its unnecessary and unreasonable delay in holding his revocation hearing, which violated his due process rights. After review, we affirm Tallie's sentence.

1

*Factual and Procedural Background*

In February 2018, the State charged Tallie in case 18 CR 30 with one count of possession of cocaine, a severity level 5 drug felony, and one count of obstruction of legal process, a class A nonperson misdemeanor. The State also charged him in case 18 CR 111 with one count of felony possession of drug paraphernalia, a severity level 5 drug felony. In November 2019, Tallie pleaded no contest to both cases.

In January 2020, the district court sentenced Tallie in case 18 CR 30 to a controlling sentence of 17 months' imprisonment and a consecutive six months in jail but suspended that sentence and placed Tallie on probation for 12 months. In case 18 CR 111, the district court sentenced Tallie to 17 months' imprisonment but suspended that sentence and placed Tallie on probation for 12 months. The district court ordered these two underlying sentences to run consecutive, but the probation terms would run concurrent and would begin after Tallie finished serving a prison sentence in an unrelated case. Tallie began serving his probation term in March 2020, after he finished serving his unrelated prison term.

Shortly after, in July 2020, the State filed a warrant to arrest Tallie based on probable cause that he violated his probation because he had been arrested and charged with possessing paraphernalia with the intent to distribute, possession of opiates, criminal possession of a weapon, criminal use of a weapon, and possession of marijuana in case 20 CR 130. The State also alleged that Tallie had not been truthful with his probation officer regarding his address.

In October 2020, the district court held a preliminary hearing in Tallie's new case (20 CR 130), during which the State called witnesses and Tallie represented himself. After hearing the evidence, the district court did not find evidence to support the distribution charge, but bound Tallie over on all the other charges. The State did not

pursue revocation of Tallie's probation at this hearing and instead asked that the cases be scheduled for a status conference at the next hearing to keep them "tracking along."

From this point on, the revocation of Tallie's probation was delayed by numerous hearings. We summarize them below because the context of the delays is important, as Tallie's appeal focuses on the delays and the reasons for them, arguing the delays were unnecessary and unreasonable.

In November 2020, Tallie filed a pro se motion responding to the State's amended application to revoke probation, which stated, in part, "The State has already agreed to delay the revocation of Defendant[']s Community Corrections until the final conclusion of his new case, 2020-CR-130-G." This suggests that Tallie had requested the delay, but even if he did not, he tacitly agreed to it and never opposed it.

In December 2020, the district court held a motions hearing. There, the parties discussed the pending motions to revoke probation and a motion to revoke Tallie's bond. The district court heard the State's motion to revoke bond and continued that motion to January 2021 after the court impressed upon Tallie that he was not allowed to go places other than those permitted by his electronic monitoring agreement (which was how he was being monitored on bond) and that he needed to keep his monitoring device charged.

Another motions hearing was held in January 2021. The district court heard testimony regarding the revocation of Tallie's bond and found that he had violated the conditions of his bond, revoked it, and reinstated bond again with electronic monitoring, advising Tallie he was on a "tight rope" because he had struggled to follow the rules of the electronic monitoring bond.

In March 2021, the district court held another status and motions hearing. At this point Tallie was appearing pro se with standby counsel. Tallie had moved to modify the

3

conditions of his bond, but the district court commented that the motion was premature because Tallie had presented no evidence that the modifications were necessary. For example, he claimed he needed to be able to attend college classes, but did not give the district court his class schedule. The district court gave Tallie grace, as he was representing himself, and stated: "Well, I would say at this juncture then this motion is premature if you want the Court to consider it. Otherwise I am going to deny it. . . . [I]t is up to you, Mr. Tallie. Are you asking for a continuance on your motion to modify?" And Tallie opted to continue his motion.

Tallie's standby counsel then told the court that Tallie had mentioned that he wanted court-appointed counsel and requested the district court ask Tallie whether he wanted to continue pro se or if he wanted court-appointed representation. Standby counsel commented that the delay in the forward progress of the case was attributable to Tallie's self-representation. He explained that he was unaware of matters Tallie did not ask him about and that Tallie failed to do simple procedural things that appointed counsel would swiftly handle, rather than waste the court's time.

Tallie responded that he wanted court-appointed counsel, and the district court granted that request. Tallie was concerned, however, that new counsel would not be able to move as quickly as he wanted, and the district court told him he did not think it would unnecessarily delay Tallie's motion.

The court set Tallie's motion to modify his bond to the next available setting, in April 2021. As he requested, Tallie was appointed new counsel, and the district court gave Tallie her information. During a recess, the district court contacted counsel and ensured that she would be available for the April hearing. The hearing was held as scheduled but Tallie appeared late and still had not given his attorney the necessary information (such as his work schedule) to modify his bond. The district court stated:

4

"Once that information is provided, I will proceed with that. But there is nothing before this Court as it stands right now."

The next available hearing was in June 2021. Tallie's counsel told the district court that the intent was to dispose of the probation revocations after the resolution of his new case, 20 CR 130. The district court then asked about the scheduling of the jury trial, but Tallie's attorney requested a continuance to allow time for Tallie's counsel to communicate with him before they set a trial date because Tallie had missed his scheduled meeting with her. Tallie's counsel stated she understood "the delay would be charged" to Tallie, but without speaking with her client she would be unnecessarily taking up the court's jury trial time.

The district court then discussed Tallie's speedy trial rights with him. It told him that Tallie's failure to communicate or facilitate his attorney's representation would not be held against the State when assessing whether Tallie's rights to a speedy trial were violated. Tallie did not object to the continuance his counsel requested from June to July.

But the July 2021 hearing faced similar issues as the June hearing. Tallie's attorney could not effectively communicate with the district court because Tallie was not communicating with her. The district court impressed upon Tallie that he needed to meet with his counsel "so that you can assess and go forward and that you can direct the Court on what we are setting these for. Because right now we are just spinning our wheels." The hearing was again continued to September 2021.

At the September 2021 hearing, Tallie's attorney withdrew for lack of communication with her client, despite her efforts to meet with him. The district court told Tallie that it would have to contact a few attorneys to find one who was qualified to handle his level of offenses, and the court set a hearing at which the district court would

5

provide Tallie with his new attorney's information. The hearing was continued to October 2021.

In October 2021, the district court appointed new counsel and provided counsel's contact information to Tallie. The cases were continued to December 2021, so new counsel had time to receive discovery and "get up to speed."

The December 2021 hearing was a status conference, and Tallie's new counsel had not yet received discovery from the State, which counsel needed to be able to move forward. The district court continued the case for another status conference in February 2022. At that hearing, Tallie's counsel told the court the State had made a global plea offer, but he needed additional discovery from the State to advise Tallie. The parties agreed to another continuance.

In early April 2022, Tallie filed a pro se motion objecting to the district court's refusal to modify his bond; his arguments in support of that motion alleged a due process violation. About a week later, Tallie's attorney moved to withdraw because Tallie had told him he wanted to represent himself. Before taking up that motion, the district court denied Tallie's motion to modify his bond and ordered him to remain on supervised bond via house arrest. Tallie interjected:

> "Your Honor, I just wanted to mention I am not sure if you are really aware but the very first day at my first appearance I asked for a preliminary examination and a trial. I have been pushing for this for 21 months. I have spent six months incarcerated and ten months on house arrest and I have paid thousands of dollars in fines and I have paid thousands of dollars on house monitoring fees.
>
> "And I have not been offered a speedy trial, Your Honor. And I still stand that I am not guilty as [it was] not my cocaine, not my weapon, and the search warrant itself—I don't know if you have read it."

6

The district court then cut off Tallie and told him now was not the time to present his defense. Tallie then asserted his "civil rights" were being violated and mentioned his statutory and constitutional right to a speedy trial.

The district court then asked defense counsel if counsel was still moving to withdraw, and counsel stated that he was. Defense counsel stated: "And I had intended to do everything that Mr. Tallie had asked me to do. I just was waiting on the discovery in order to have the proper basis for filing a motion to suppress."

While the parties determined which cases were still pending, the district court asked Tallie: "[Y]ou want to have a jury trial on your pending criminal case; is that correct?" Tallie responded, "Yeah. And, I mean, also like solely I wanted—because in the past two years I haven't been appointed an attorney who will just go forward with everything and make sure my rights are exercised." Tallie then stated he would proceed pro se and the court appointed his counsel who had just withdrawn as standby counsel. Tallie's trial for his pending criminal case was then set for July 2022.

In June 2022, Tallie filed a "Motion to Dismiss for Numerous Constitutional and Statutory Violations." This motion argued his pending criminal case should be dismissed under the United States and Kansas Constitutions and Kansas statutes. But this motion made no argument about his pending probation revocations.

About a week later, the district court held a probation revocation first appearance for Tallie. But by the next hearing later that month, a new district court judge—the third in the case—had taken over and Tallie had since been placed under the custody of the Crawford County Sheriff. The district court asked Tallie if he wished to continue representing himself, and he responded:

7

"Well, Your Honor, in order to get a speedy trial, that is my only choice. Unless you can appoint me an attorney who is ready to represent me today in a trial, I don't want to have any more continuances, because I have been asking for a trial for two years and I have never asked for a continuance and have been very adamant about what I want."

Tallie's standby counsel then asked to withdraw because of his contentious relationship with Tallie and his belief that if he had to step in at trial, he would be unable to effectively do so because of their fractured relationship. The district court allowed standby counsel to withdraw and appointed new standby counsel. Tallie was upset that the appointment of new standby counsel was going to delay his trial again, but the district court explained that he would not allow Tallie to go to trial without standby counsel because that was how the court would ensure that Tallie's rights were protected during the trial.

In July 2022, the district court held a motions hearing. Yet again, newly-appointed standby counsel requested to withdraw, citing ethical reasons that he could not fully disclose. Ultimately, the district court permitted standby counsel to withdraw due to the ethical constraints. Tallie then asserted his rights to a speedy trial and argued that his prior motion should be construed to apply to his probation revocation cases as well as to his criminal case. After hearing arguments, the district court decided that he would uncouple the probation revocations and the new criminal case and hear the probation revocations in 18 CR 30 and 18 CR 111 before the jury trial in 20 CR 130.

In August 2022, the district court held another hearing, which was initially scheduled as the probation revocation hearing. But before the hearing, Tallie had sued the sheriff and the district court judge presiding over the case. Because that lawsuit put the judge's participation in the case into question, the State excused its witnesses that were set to appear at this hearing. Because of that, and because Tallie had just been appointed new standby counsel, the district court continued the case until later in the month. When

8

the set date came, Tallie moved to dismiss the probation violations, arguing that the district court had lost jurisdiction because of unnecessary delay, which violated his due process rights.

Later that same day, the district court began the probation revocation hearing. Tallie alleged the State had failed to provide him with full discovery, but the State disagreed. The district court stated he had no reason to believe the State had not complied with the orders. To work around Tallie's claim that he did not have discovery, to avoid unnecessary delay, and for efficiency purposes, the district court permitted the State to present its case and declared that after the State rested, it would hold the court in recess to permit Tallie to see if he were truly missing documents. Then Tallie could present his case later after checking his discovery.

At the hearing, Tallie raised an oral objection that the probation revocation hearing was untimely. The district court overruled that objection. After three witnesses testified, the State rested its probation revocation case. Because Tallie takes issue with the timing of the revocation of this probation and not with the basis of the revocation of his probation, we find it unnecessary to summarize the evidence presented in support of the revocation. The remainder of the probation revocations hearing was continued to September 2022.

In September 2022, the district court found that Tallie had violated the conditions of his probation by committing new crimes and by not residing at his indicated address while on probation, and it revoked his probation. The district court ordered "him confined until the other cases are resolved, but I am revoking probation in both of those cases."

In November 2022, Tallie filed another motion arguing that the State had delayed disposition of his probation revocations beyond lawful limits so he should be discharged from custody. In December 2022, the district court heard motions about the probation

revocations and Tallie's renewed argument that they should be dismissed. The district court denied Tallie's motions and opted to take up the parties' requests for final orders in the probation revocations. The State argued that Tallie's underlying sentence should be imposed, and Tallie argued he should receive intermediate sanctions. But, after the parties' arguments, the district court took the disposition under advisement:

> "And I will be very blunt. I am not prepared to make a decision about Mr. Tallie's future until I know guilt or innocence in [20 CR 130]. I am not. If he is acquitted, then I have—I will look at these probation violations in a different light than I am if he is convicted. So what I am going to do is I am going to take the State's motion under advisement. I am not going to rule today. I am going to set this hearing over for further argument at the conclusion of the trial in February.
>
> "Because the outcome of that will make a tremendous difference. I am not willing to bypass intermediate sanctions and send Mr. Tallie to prison for 34 months at this point and you give him a year's jail credit, give or take a few days, until I know what is—what happened on July 6 and July 7 from the point of view of a jury and a jury's decision."

In February 2023, a jury found Tallie not guilty of the charges in 20 CR 130. The district court later took up the disposition of Tallie's revoked probation. The State renewed its argument that Tallie should serve his underlying sentence but argued in the alternative that the district court impose a three-day jail sanction and then reinstate Tallie to probation for 12 months. Tallie's appointed standby counsel argued for a 60-day jail sanction and to have his probation be reinstated for 12 months. The district court ordered Tallie to serve a three-day jail sanction and reinstated his probation for 12 months.

Tallie timely appeals the revocation of his probation.

10

I. *Did the District Court Err by Revoking Tallie's Probation?*

On appeal, Tallie raises two main arguments: (1) the State waived its right to pursue the revocation of his probation so the district court lacked jurisdiction to impose 12 more months of probation, and (2) the State's failure to timely resolve his probation violations violated his due process right to a speedy trial. In response, the State argues that Tallie's challenges to the revocation of his probation are moot because while his case was pending on appeal, he completed the reimposed 12-month probation term.

A. *Does mootness preclude our review of Tallie's appeal?*

Before we can reach the substance of Tallie's argument, we must address the State's claim of mootness. The State argues that Tallie's challenges to the revocation of his probation are moot because while his case was pending on appeal, he completed the reimposed 12-month probation term. Tallie counters that the case is not moot because if the district court improperly reinstated him to 12 months' probation, then his initial term of probation would have expired on March 6, 2021, yet the additional time spent on probation extends the time that he must wait to seek expungement of his convictions. The State counters that expungement does not create a concrete enough right to warrant consideration by this court because it depends on a future determination by a district court.

Because mootness is a doctrine of court policy, which courts developed through precedent, appellate review of the issue is unlimited. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020).

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, under which the court is to determine real controversies about the legal rights of persons and properties that are

11

actually involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. *Roat*, 311 Kan. at 590. "A case is moot when a court determines that "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'"" 311 Kan. at 584 (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]).

"The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance." *Roat*, 311 Kan. at 593. In an appeal solely challenging a sentence, as here, the party asserting mootness may establish a prima facie showing of mootness by showing that the defendant has fully completed the terms and conditions of his or her sentence. The burden then shifts to the party opposing the mootness challenge to show that dismissal would impair a substantial interest or that an exception to the mootness doctrine applies. 311 Kan. at 593.

Here, the State has established a prima facie showing of mootness by filing an update to Tallie's custodial status under Kansas Supreme Court Rule 2.042 (2025 Kan. S. Ct. R. at 18) that shows Tallie has fully completed the terms and conditions of his sentence. Accordingly, the burden then shifts to Tallie to show that dismissal would impair his substantial interest or that an exception to the mootness doctrine applies. *Roat*, 311 Kan. at 593. Tallie seeks to meet this burden by arguing that if this panel finds that the district court illegally extended his probation, he could immediately exercise his right to seek expungement. See *State v. Ward*, 311 Kan. 619, 623-24, 465 P.3d 1143 (2020) (suggesting but not holding that delaying defendant's opportunity to seek expungement is sufficient right to be considered when determining mootness of probation revocation case).

The date Tallie satisfied his sentence affects his rights under K.S.A. 21-6614 to seek expungement. See *Montgomery*, 295 Kan. at 840-41. Under that statute, a person

12

convicted of a misdemeanor or a severity level 5 drug felony (among other crimes) may petition the convicting court for the expungement if three or more years have elapsed since the person satisfied the sentence imposed or was discharged from probation. Tallie's underlying crimes of conviction were a misdemeanor and two severity level 5 drug felonies. So if the district court improperly imposed an additional 12 months' probation, Tallie's 3-year waiting period would have already run and Tallie could immediately pursue expungement of his convictions. Based on the facts, we cannot find that "the only judgment that could be entered would be ineffectual for any purpose." *Roat*, 311 Kan. at 584. Thus this appeal is not moot.

B. *Did the district court improperly impose 12 more months of probation after unnecessary delay?*

Tallie argues the State's 30-month delay between the issuance of the warrant and the disposition of his probation violations impliedly waived its right to prosecute his probation revocation and violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In support of his claim that the district court lacked jurisdiction to revoke his probation, Tallie asserts (1) the State failed to timely initiate revocation proceedings within his probationary term, and (2) even if timely initiated, the State failed to act in a timely and reasonable manner to revoke his probation, which violated his rights under the Fourteenth Amendment.

To the extent resolution of this issue requires interpretation of a statute, our review is unlimited. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

K.S.A. 22-3716 establishes the procedures a district court must follow after an alleged probation violation. It states that a district court has jurisdiction to revoke

13

probation if the proceedings are initiated within 30 days after the probationary term expires. K.S.A. 22-3716(e). "Filing a motion to revoke probation is sufficient to institute a probation proceeding." *State v. Curtis*, 42 Kan. App. 2d 132, 135, 209 P.3d 753 (2009). Tallie's initial 12-month probationary term began on March 6, 2020, and the State filed its motion to revoke probation on July 13, 2020. The revocation proceedings began during Tallie's probationary term and were thus timely initiated.

Tallie's weightier argument is that the 30-month delay before his probation hearing was unnecessary, violating K.S.A. 22-3716(b)(2). That statute provides that unless a defendant waived his or her right to a hearing, "the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." K.S.A. 22-3716(b)(2). Yet guidance on the phrase "unnecessary delay" in the context of this statute is scant. In *Toman v. State*, 213 Kan. 857, 860, 518 P.2d 501 (1974), the Kansas Supreme Court held that what constitutes unnecessary delay under K.S.A. 22-3716 "depends upon the facts and circumstances of each case." In *Toman*:

> "There was evidence in this case that the district judge was on vacation when the petitioner was arrested, that there were other difficulties in scheduling the probation hearing, that it was stipulated the petitioner had violated his probation and that probationer's attorney with the consent of the petitioner worked out the agreement to extend probation during this lapse of time. This being a factual question we cannot say the trial court erred in finding there was no unnecessary delay in concluding the probation hearing." 213 Kan. at 860-61.

Given these considerations, the *Toman* court found that the three-and-a-half-month delay from arrest to probation hearing was not unreasonable. 213 Kan. at 860-61. See also *Northcott v. Hand*, 186 Kan. 662, 666-67, 352 P.2d 450 (1960) (holding four-month delay was not unnecessary).

14

The Kansas Supreme Court has also considered "unnecessary delay" in other contexts. That phrase is used multiple times in K.S.A. 22-2901, which controls a defendant's appearance before a magistrate after arrest. That statute requires "[i]f the arrest has been made on probable cause, without a warrant, [the person arrested] shall be taken without unnecessary delay before the nearest available magistrate and a complaint shall be filed forthwith." K.S.A. 22-2901(1). In *State v. Wakefield*, 267 Kan. 116, 123, 977 P.2d 941 (1999), the Kansas Supreme Court determined that a delay in prosecution did not violate K.S.A. 22-2901 when the prosecutor had requested a delay to allow for further investigation before potentially filing capital charges, and the delay enabled the capital defender's office to not be conflicted out of the case. The *Wakefield* court held that "when considering the circumstances of this case, and the potential conflicts in appointing the capital defender, that delay was necessary." 267 Kan. at 123. It thus applied a case-by-case approach to the question, as did *Toman*. We do the same.

Tallie asserts that the entire delay in this case was attributable to the State. But our review of the record causes us to disagree. In the early stages of the case, the filings indicate that Tallie wished to delay the revocation of his probation until the conclusion of his new criminal case, 20 CR 130. The district court acceded to Tallie's wishes.

And as detailed above, the delays in Tallie's case had a great deal to do with him asserting, then rescinding, his right to represent himself (and his occasionally ineffectual ability to do so, which caused delays), not once but several times. Once Tallie was moving toward trial pro se, multiple standby counsels had to withdraw because of ethical or other issues in continuing their representation of Tallie. This cycle required the district court to seek and find other standby counsel for Tallie. The safeguarding of a defendant's right to counsel does not create an unnecessary delay. See *Wakefield*, 267 Kan. at 123-24.

Finally, as the new criminal case lingered unresolved, the district court determined in July 2022 that keeping the probation revocation linked to the new criminal case was no

15

longer the best plan. So the district court began moving the probation violations forward separately from Tallie's new criminal case.

The probation revocation hearing occurred on August 30, 2022. At that hearing, Tallie asserted, and the State denied, that the State had withheld discovery. To avoid further delay, the district court permitted the State to present its case. It then gave Tallie a month before responding to ensure that he had all the discovery he needed to present his case. This delay was for Tallie's benefit.

After Tallie presented his case against probation revocation, the district court determined that whether Tallie was found guilty or not guilty in 20 CR 130 greatly impacted the disposition of his probation violation. Logically, if Tallie were found guilty, the disposition would be more severe than if he were acquitted. After Tallie was acquitted in 20 CR 130, rather than imposing Tallie's underlying sentence in the probation revocation case, as the State argued, the district court reinstated Tallie to an additional term of probation. So this delay in awaiting a verdict in Tallie's new criminal case worked in Tallie's favor.

It is disingenuous of Tallie to assert that the entire delay is attributable to the State. He agreed from the start that his probation revocations should be linked together with his new criminal case. And although delays were long, the evidentiary hearing on his probation violations was held as promptly as the district court's schedule permitted once Tallie chose to represent himself and then the district court ensured Tallie's right to counsel was protected and unlinked the two proceedings.

Tallie argues that a hearing on his probation violations could have been held as early as October 2020, when the district court held a preliminary hearing in 20 CR 130. Assuming that this is so, we find this immaterial as the applicable standard is whether the delay was unnecessary. And this assertion ignores the fact that Tallie did not want the

16

probation violations to be resolved until after 20 CR 130 was resolved. He also argues that at least 13 other hearings were held before the resolution of his probation violations; but this ignores the content of those hearings, many of which caused delays due to Tallie's ineffectual self-representation, the court's need to ensure he was represented by counsel, and the search for conflict-free standby counsel.

Although the delay was long, considering all the facts of record, we find it was not unreasonable or unnecessary.

C. *Did the delay violate Tallie's due process rights?*

Tallie argues the State's 30-month delay between the issuance of the warrant for probation violations and the disposition of the probation violations impliedly waived the State's right to prosecute Tallie's probation revocation under the Fourteenth Amendment's Due Process Clause. When, as here, the question on appeal is whether the district court complied with due process requirements when revoking probation, appellate courts have unlimited review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016).

A district court generally retains jurisdiction to revoke an individual's probation even after the probationary period has concluded if "the proceedings were instituted during the term of the probation and revocation occurs within a reasonable time thereafter." *State v. Haines*, 30 Kan. App. 2d 110, 112, 39 P.3d 95 (2002). But a "failure to act in a timely and reasonable manner may divest the district court of jurisdiction to revoke probation if there is an unreasonable delay, which must be determined on the circumstances of each case." *Curtis*, 42 Kan. App. 2d at 136-37 (citing *State v. Hall*, 287 Kan. 139, 144-45, 195 P.3d 220 [2008]).

Due process typically requires that the State "act in a timely and reasonable manner" when pursuing the revocation of an individual's probation. *Haines*, 30 Kan. App.

17

2d at 112. Even so, "delay alone does not constitute a due process violation." *Curtis*, 42 Kan. App. 2d at 140. Kansas courts must evaluate whether the defendant was prejudiced because of the delay and whether the State has forfeited its right to pursue the probation violation. See 42 Kan. App. 2d at 142.

Other courts have applied the factors test found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether a State acted with reasonable diligence in pursuing a defendant's probation revocation. Yet the Kansas Supreme Court has stated that the test traditionally used in Kansas—a showing that prejudice has resulted from the delay—is the proper one. *Hall*, 287 Kan. at 154; but see *Curtis*, 42 Kan. App. 2d at 143-46 (applying factors in *Barker*—length of delay, reason for the delay, defendant's assertion of his or her right; and prejudice to defendant). We thus do not apply *Curtis* here. In *Hall*, the Kansas Supreme Court elaborated: "While the other approaches include other factors, prejudice caused by the delay is always an important factor. 2 Cohen, §§ 22:22 to 24:24. We see no persuasive reason to create a different test for this circumstance than the prejudice test Kansas courts have utilized in other contexts." *Hall*, 287 Kan. at 154. Put another way: "Delay between the time of a probation violation and the initiation of revocation proceedings does not constitute a due process violation unless prejudice to the defendant is shown by the delay, or there is an indication that the violation has been waived by the government." *State v. Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5, 8 P.3d 8 (2000).

### 1. *No waiver by the State*

Tallie asserts that the State waived his probation violation. See *Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5. But the facts of this case show that the State acted with reasonable diligence. The State moved to revoke Tallie's probation in a timely manner, then later agreed to hold the probation revocation until after the disposition of the new criminal case, at Tallie's request. The State's agreement to do so fails to suggest that the State

intentionally or implicitly waived the pursuit of the probation violations. In fact, when delays continued to prolong the disposition of the new criminal case apparently beyond a time the parties had originally anticipated, the State had no objection when the district court stated it was going to uncouple the cases and proceed with the probation revocations independently of the new criminal case. Throughout the process, the district court held many status conferences and motions hearings, indicating that the case was not lying dormant, but was working its way to final disposition. Delays were due to the parties' agreement or to give Tallie's new counsels enough time to prepare. Given the facts of this case, although the delay was long, nothing suggests that the State waived the prosecution of these probation violations.

## 2. *No prejudice shown by Tallie*

The other way Tallie can show a violation of his due process is through prejudice. "The three factors that may demonstrate prejudice to the defendant are an oppressive pretrial incarceration; the defendant's anxiety and concern; and, most importantly, the impairment of his or her defense." *State v. Rivera*, 277 Kan. 109, 118, 83 P.3d 169 (2004).

As for the first factor, Tallie was not incarcerated for most of the pendency of the case. Rather, he was on house arrest as a condition of his bond. Although his movements were limited, he was nevertheless at home and other permitted places. The potential prejudice arising from oppressive pretrial incarnation is thus lessened. This factor weighs against prejudice.

As for the second factor, a "'defendant incarcerated for a reason other than the delay in the hearings cannot properly attribute his anxiety at being incarcerated-or the prejudice it implies-to the hearing delays.'" *Hall*, 287 Kan. at 154-55, (quoting *State v. Benjamin*, 182 Vt. 54, 64, 929 A.2d 1276 [2007]). But Tallie was awaiting trial on his

19

new criminal case while his probation revocations were pending. So the stress of his electronic monitoring cannot be attributed solely to his pending probation violation cases. While Tallie asserts emotional impacts from the delay, the *Hall* court elaborated that "'emotional anxiety' attached to waiting to learn of the outcome of the revocation motion" is insufficient to create a right to due process. 287 Kan. at 154. This factor, too, weighs against prejudice.

And as for the third and most important factor, Tallie does not contend that his defense was impaired by the delay. Thus, this factor weighs against prejudice.

Tallie does assert that he was prejudiced by these "continually pending probation violations" because they affected his bond reduction and modification. But our review of the record reflects that it was not Tallie's pending probation cases that prevented changes to his bond, but his refusal to comply with electronic monitoring. For example, he would allow the device to die and would then make trips to unauthorized locations. In fact, the district court told Tallie he was on a "tight rope" because he struggled to follow the rules of electronic monitoring bond. Tallie fails to show the pending probation revocations were the reason his bond was not modified.

We acknowledge that the delay here is long, yet that fact alone does not require us to find prejudice. Other courts have found lengthy delays unproblematic given the facts in those cases. See *Hall*, 287 Kan. at 153 (6-year delay); *State v. Medlock*, No. 126,801, 2024 WL 4471488, at *1 (Kan. App. 2024) (unpublished opinion) (18-month delay), *rev. denied* 320 Kan. __ (February 29, 2025); but see *State v. Myers*, 39 Kan. App. 2d 250, 251, 178 P.3d 74 (2008) (over 2-year delay violated due process).

The district court thus did not violate Tallie's due process rights, and it had jurisdiction to revoke Tallie's probation.

20

II. *Is Tallie's Sentence Illegal?*

Tallie's pro se supplemental brief argues that his sentence is illegal. First, he argues that the district court's additional 12-month term of probation should be from the date his probation would have originally expired, and second, it was unfair of the district court to impose a sanction and extension because of the time he spent in custody throughout his other criminal case. In response, the State contends that the district court was statutorily authorized to impose the sanction and to reinstate an additional probationary term.

An illegal sentence is defined in K.S.A. 22-3504(c)(1) as "one imposed by a court without jurisdiction, one that does not conform to the applicable statutory provision, or one that is ambiguous." *State v. Cook*, 319 Kan. 777, Syl. ¶ 1, 560 P.3d 1188 (2024). But Tallie provides no law supporting the contentions in his brief that his sentence is illegal. Failure to support a point with pertinent authority is like failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). And issues not adequately briefed are deemed waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). He thus fails to show that his additional probation term is an illegal sentence.

Affirmed.